**In re MERCURY MASONRY CORPORATION and LaSala Enterprises, Inc., Debtors.**

**MERCURY MASONRY CORPORATION, Plaintiff,**

v.

**TERMINAL CONSTRUCTION CORPORATION, Defendant.**

**Bankruptcy No. 87–B–20425–6.**

**No. 90 ADV. 6024.**

United States Bankruptcy Court, S.D. New York.

Aug. 20, 1990.

See also, Bkrtcy., 114 B.R. 35.

Shea & Gould, New York City, for Mercury Masonry Corp.

Goddard & Blum, New York City, and Barr & Rosenbaum, Spring Valley, N.Y., for Terminal Const. Corp.

Angel & Frankel, P.C., New York City, for Joint Creditors' Committee.

## DECISION ON MOTION FOR SUMMARY JUDGMENT AND CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

Terminal Construction Corporation ("Terminal"), a defendant in an adversary proceeding commenced by the Chapter 11 debtor, Mercury Masonry Corporation ("Mercury"), has moved for summary judgment dismissing the debtor's complaint on the basis of signed, notarized releases issued by the debtor as a precondition to the receipt of 22 periodic partial payments which the debtor received from Terminal. The debtor opposes Terminal's motion for summary judgment on the ground that it executed the partial payment releases with the intention that it released Terminal only from claims relating to each partial payment, except for retainages held by Terminal, and that the debtor did not release Terminal from all other claims related to the construction contract between the parties. The debtor argues that summary judgment is inappropriate because there exist questions of fact as to the intent of the parties in signing the releases and whether the releases were signed as a result of fraud or duress.

The debtor cross-moved for partial summary judgment as to the retained percentages which Terminal withheld from each partial payment to the debtor. Terminal opposes the debtor's motion as to the retainages on the ground that the debtor is not entitled to recover any retainages withheld by Terminal unless the debtor completes its work under the construction contract between the parties, pays its suppliers and full payment is received by Terminal for the construction work.

### Factual Background

On November 7, 1983, the debtor, Mercury, entered into a subcontract with Terminal, a general contractor, for the construction of a new Federal Office Building located in Jamaica, New York. Mercury agreed under the subcontract with Terminal to provide labor and materials for the installation of certain masonry and brick work for the project.

The subcontract between the debtor and Terminal provides that Terminal "agrees to make monthly partial payments of approximate estimates of the amount of work completed and materials, equipment and services furnished each month less 10 per cent retainage to insure the faithful completion of this Agreement ...".

The payment provision in paragraph # 23 of the agreement also provides:

> As a condition precedent to any payment due the Subcontractor, it shall deliver to the Contractor a release *from all of its Subcontractors and Materialmen,* in form satisfactory to the contractor, as well as an affidavit as to all unpaid materialmen, labor, etc. incurred or to be incurred by the Subcontractor, the entire work being subject to final approval and inspection of the Contractor and the Owner upon completion; pursuant to the prime contract documents.

(Emphasis added).

In paragraph # 24 the contract provides that because acceptance occurred in the State of New Jersey, where the Contractor was located, the laws of the State of New Jersey shall control the enforcement of the contract.

For the period from May 22, 1986 through August 4, 1987, inclusive, Terminal made 22 partial payments of approximate estimates of the amount of work completed and materials, equipment and servic-

es furnished periodically by the debtor, totalling $4,012,285.82. The contract price called for a total payment from Terminal to the debtor in the sum of $5,250,000.00.

In exchange for each periodic progress payment made to the debtor by Terminal, the debtor executed a notarized release on a printed form furnished by Terminal which reads in pertinent part as follows:

KNOW ALL MEN BY THESE PRESENTS THAT Mercury Masonry Corporation Subcontractor furnishing material and performing work for the Masonry, Cast Stone Caulking, etc. on the Construction of New Federal Building being constructed by TERMINAL CONSTRUCTION CORPORATION, as General Contractor, for Bldgs. Serv., Washington, D.C. at Jamaica, Queens, New York hereby acknowledges receipt of the sum of $_____ being the partial payment due on its Agreement No. S-7 dated Nov. 7, 1983, including all extras, and does hereby release the said TERMINAL CONSTRUCTION CORPORATION and/or Entire Mechanical Co., Inc. from all claims of any kind, directly, indirectly or otherwise, arising out of the contract and/or of the work performed up to the date hereof, releasing the said TERMINAL CONSTRUCTION CORPORATION and/or Entire Mechanical Co., Inc. from all manner of debts, sums of money, liens, claims, and demands of whatsoever kind, which it has up to the date hereof, except only the right to receive the retained percentages, if any; and,

The said Subcontractor additionally releases its right against the building and land upon which the work has been done so that the owner of the premises, its successors and assigns, shall be freed and discharged by any claims, and so that the owner of the said lands and premises may hold and enjoy the buildings and lands free of any lien, claim and demand which the Releasor now has or might or could have on or against the same up to the date hereof, if these presents had not been made.

On September 10, 1987, Mercury and its affiliated company, LaSala Enterprises, Inc., filed with this court petitions for relief under Chapter 11 of the Bankruptcy Code, and continued to manage their properties and operate their businesses as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

By motion dated November 20, 1987, Terminal sought to require the debtor to assume or reject the construction subcontract which the parties executed on November 7, 1983 with respect to the Federal Office building in Jamaica, New York. After a hearing, this court directed the debtor to move to assume or reject the construction subcontract with Terminal on or before January 10, 1988. Thereafter, the debtor moved to assume the contract, which motion was subsequently withdrawn by the debtor. The court then entered an order on February 23, 1988 deeming the subcontract rejected to the extent that it had not already been terminated by conduct of the parties.

Prior to the deemed rejection of the construction subcontract, Terminal filed a proof of claim in the amount of $5 million against the debtor for breach of contract.

In its adversary complaint dated March 2, 1990, the debtor alleges that at the time of the deemed rejection of the contract, the debtor had completed in excess of 90% of the contracted services under the construction subcontract with Terminal and had the ability to fully complete the contract. The debtor alleges that Terminal failed to pay the balance of $1,237,714.18 due and owing under the construction subcontract and owes the debtor for extra labor and materials furnished in the amount of $2,398,663.00, for a total amount of compensatory damages of at least $3,636,377.18.

On June 1, 1990, Terminal filed its answer to the debtor's complaint which contained various denials, fourteen affirmative defenses, three counterclaims and a jury demand. Some of the affirmative defenses allege waiver, estoppel, election of remedies, release, and the application of a contractual forum selection clause. The three counterclaims are for breach of contract

and consequential damages. The debtor filed a reply dated June 26, 1990, containing denials and six affirmative defenses.

On July 20, 1990, Terminal filed a motion for summary judgment pursuant to Fed.R. Civ.P. 56, as adopted by Bankruptcy Rule 7056, seeking to dismiss that portion of the debtor's claim which is not for retained percentages accruing prior to August 4, 1987. Terminal's motion is based on the 22 releases executed by the debtor in exchange for the partial payments from Terminal. Terminal contends that the 22 separate releases through August 4, 1987 acted to discharge Terminal from any liability, except for retained percentages incurred prior to August 4, 1987.

On July 13, 1990, the debtor filed a cross-motion for partial summary judgment with respect to the retained percentages held by Terminal. In opposition to Terminal's motion for summary judgment the debtor maintains that there exists genuine issues of material facts as to the following matters:

1. Whether the parties executed the partial payment releases with the intention that the releases discharge Terminal only from claims relating to each partial payment, except as to the retainages held by Terminal?

2. Whether Terminal induced the debtor to sign the partial payment releases by duress or fraud? The debtor contends that it was in financial difficulty and would not otherwise have been able to receive the partial payments. Without giving specifics, the debtor also alleges in its opposing affidavit that Terminal represented to the debtor that each partial payment release discharged Terminal from claims relating only to that partial payment.

3. Whether the debtor's claim in this adversary proceeding, or a portion thereof, arose subsequent to August 4, 1990, the date of the last partial payment?

4. Whether there was any valid consideration to support the releases?

In opposition to the debtor's cross-motion for summary judgment to recover the retainages, Terminal alleges that the debtor is not entitled to the retainages because it did not satisfy the contractual conditions precedent to recover the retainages in that it failed to pay suppliers, it failed to complete the subcontract and the U.S. Government, as owner of the building, has not yet paid Terminal in full for the contract work, including the masonry work.

### Terminal's Motion For Summary Judgment

■ In ruling on a motion for summary judgment, the court must review the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, to determine if there is no genuine issue as to any material fact so that the moving party is entitled to a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co., Inc. v. Zenith Radio Corporation*, 475 U.S. 574, 599, 106 S.Ct. 1348, 1362, 89 L.Ed.2d 538 (1986). The nonmoving party may oppose a summary judgment motion by making a showing that there is a genuine issue as to a material fact for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. at 2510.

In the instant case, in paragraph # 23 of the construction subcontract, as a condition precedent to receiving partial payments "of the approximate estimates of the amount" payable to the debtor as a subcontractor for Terminal, the debtor was required to deliver to Terminal a release "from all of its Subcontractors and Materialmen ...". This provision also required the debtor to submit an affidavit "as to all unpaid materialmen, labor, etc., incurred or to be incurred by the Subcontractor." Hence, the focus was on all of the sub-subcontractors who were engaged by the subcontracting

debtor and who could place mechanics' liens against the project. Before Terminal was required to make partial payments to the debtor as a subcontractor, Terminal was entitled to be assured and released from all claims of known and unknown sub-subcontractors who were entitled to payments from the debtor. However, the series of 22 releases which Terminal submitted to the debtor deviated from the contractual requirement because the series of releases purported to discharge Terminal from all manner of debts and claims which the debtor had against Terminal up to the date of the release, except the right to receive the retained percentages. There was no requirement specified in the construction subcontract which obligated the debtor to release its own claims against Terminal as a condition precedent to receiving partial payments of approximate estimates of the amount of work completed and materials, equipment and services furnished by the debtor under the contract. Therefore, there is a genuine issue as to whether the series of releases signed by the debtor were invalid for lack of consideration.

Additionally, each release refers to a partial payment due under the construction subcontract. In paragraph # 23 of the construction subcontract, Terminal agreed to make "monthly partial payments of approximate estimates" of the amounts due the debtor under the contract. In view of the fact that these partial payments are merely "approximate estimates", it is apparent that the correct partial payments owing to the debtor under the contract may not necessarily be the same as "approximate estimates". Accordingly, there is a genuine issue as to whether the debtor intended to release Terminal from all claims it had at the time of the receipt of the "approximate estimates." Conceivably, the debtor might have intended to release Terminal for all claims it had with respect to the amounts actually received, but that it had no intention of releasing Terminal for claims with respect to any amounts that might correctly be due at the time and were not included in the "approximate estimates". Under New Jersey law, which is substantially the same in New York, only those claims which are intended to be covered by a release are discharged. *Goncalvez v. Patuto*, 188 N.J. Super. 620, 458 A.2d 146 (Super.Ct.App. Div.1983); *Cartel Capital Corp. v. Fireco of New Jersey*, 81 N.J. 548, 410 A.2d 674 (N.J.1980); *Bilotti v. Accurate Forming Corp.*, 39 N.J. 184, 188 A.2d 24 (N.J.1963).

It is not clear from the language of the releases whether the parties intended that the releases should extend to all sums finally determined to be due the debtor from Terminal or limited in scope to the "approximate estimates" referred to in the construction subcontract between the parties. This point is of significance in this case because there is no clear language in the contract between the parties to reflect that the debtor, as distinguished from those materialmen which it engaged for the project, was ever required to deliver to Terminal a release of the debtor's own claims against Terminal as a condition precedent to the receipt of periodic partial payments of "approximate estimates."

In light of the existence of genuine issues of material facts, summary judgment cannot be granted in favor of Terminal.

### Debtor's Cross–Motion For Summary Judgment

The retainages referred to in the debtor's cross-motion for summary judgment represent sums deducted by Terminal from amounts due the debtor under the construction subcontract and withheld by Terminal at the rate of 10 percent of the amounts to be paid to the debtor to ensure full performance under the contract. Paragraph # 23 of the construction subcontract contains language to the effect that the reserved retainages are to be withheld by Terminal "until the said contractor has received final completion, acceptance and payment by the owner for the entire job." This paragraph also requires "that all labor and material delivered to the job and all taxes have been paid by the subcontractor and provided that the contractor has on such date been paid by the owner."

The affidavits submitted by the debtor in support of its cross-motion for summary

 

judgment with respect to the retainages fail to establish that the labor, material and taxes with respect to the debtor's performance under the construction subcontract have been paid by the debtor. The debtor admits in its pleading that it completed less than all the work required. According to the debtor's estimate it performed approximately 90 percent of the contract work. Moreover, the debtor has neither alleged nor established that it delivered to Terminal releases from all of its subcontractors and materialmen who the debtor engaged to perform work, labor and furnish materials to the project in question. The delivery of these releases from the debtor's materialmen and suppliers is expressly stated in paragraph # 23 of the construction subcontract as a condition precedent to Terminal's release of the retainages.

Having failed to establish performance of the conditions precedent to Terminal's release of the withheld retainages, the debtor has not dispelled genuine issues of material facts as to whether the debtor paid for all labor and material delivered to the job; obtained releases from all the debtor's materialmen and obtained acceptance and payment by the Federal Government for the entire job.

In light of the genuine issues of material facts with respect to the debtor's claim for retainages withheld by Terminal, the debtor is not entitled to an order for summary judgment as to this claim.

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) involving Terminal's proof of claim and the debtor's adversary proceeding with respect to the same subject matter.

2. There are genuine issues of material facts with respect to the releases executed by the debtor which preclude the entry of an order for summary judgment in favor of Terminal's causes of action alleged in its complaint in this adversary proceeding.

3. There are genuine issues of material facts which prevent the granting of summary judgment in favor of the debtor with respect to its claim for retainages withheld by Terminal under the construction subcontract between the parties.

4. The motion and cross-motion for summary judgment asserted by Terminal and the debtor, respectively, are denied because of the existence of genuine issues of material facts regarding both motions.

SETTLE ORDER on notice.